UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JAMES LEUER, JR.

and

LANDON GRAINY,

                              Plaintiffs,

   v.

STARPOINT CENTRAL SCHOOL DISTRICT,

BOARD OF EDUCATION OF STARPOINT
CENTRAL SCHOOL DISTRICT,

and

DR. SEAN M. CROFT, Superintendent Of Schools,
Starpoint Central School District,

                              Defendants.

**VERIFIED COMPLAINT**

Civ. No.:

---

James Leuer, Jr. and Landon Grainy (collectively "Plaintiffs"), by and through their attorneys, Gross Shuman P.C. (B. Kevin Burke, Jr., Esq., of counsel) and A. Angelo DiMillo, Esq., as and for their complaint against the above-named Defendants, respectfully allege as follows:

### JURY DEMAND

1. Plaintiffs demand a trial by jury on all counts.

### JURISDICTION AND VENUE

2. This action is properly before the Western District of New York pursuant to 28 USC § 1391 (b) because the claims arose in this judicial district.

3. This court has jurisdiction pursuant to 28 USC §1331 and 28 USC §1343(a) because the matters in controversy arise under the Constitution and laws of the United States.

**PARTIES**

4. James Leuer, Jr. ("Leuer") resides at 6284 Old Beattie Road, Lockport, New York 14094.

5. Landon Grainy ("Grainy") resides at 4434 Mapleton Road, Lockport, New York 14094.

6. Starpoint Central School District (the "District" and "Starpoint"), was and still is a school organized under and in accordance with the provisions of the Education Law of the State of New York, and such other laws of the State of New York made and provided, with offices for the transaction of business located at 4363 Mapleton Road in the Town of Lockport, County of Niagara, and State of New York.

7. Board of Education of Starpoint Central School District (the "Board"), was and still is a corporate body organized under and in accordance with the laws of the State of New York, with offices for the transaction of business located at 4363 Mapleton Road in the Town of Lockport, County of Niagara, and State of New York.

8. Dr. Sean M. Croft, is being sued herein in his official capacity as the Superintendent of Schools for the District (the "Superintendent" or "Dr. Croft").

9. The Board is the corporate body that sets the policies, goals, and regulations of the District and oversees and manages its affairs, personnel, and properties.

10. The authority and duties of the Board are defined by the state and federal constitutions and laws, as well as by rules and regulations promulgated by the Board of Regents

and the Commissioner of Education and its members sign an oath of responsibility as an agent of New York State for the education of all children and youth of the state.

11. The District receives federal financial assistance and funding.

12. At all times mentioned herein, the District was and is obligated to provide free public education as a "public service" and is subject to the requirements of The Dignity for All Students Act (DASA) which is a law designed to protect all students from discrimination.

### ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

13. Plaintiffs are alleged to have sexually harassed a fellow high school student and wrestling teammate, "HD." As set forth more fully below, Plaintiffs were unlawfully removed from all classroom and school activities on a so-called "emergency" basis without any due process, in violation of their constitutional rights, and without Defendants having first conducted an individualized safety and risk analysis. Defendants deliberate and/or wantonly indifferent actions have injured Plaintiffs in an amount to be determined at trial.

14. By correspondence dated February 7, 2023, sent via e-mail, styled "Notice of Emergency Removal," the Superintendent notified Plaintiffs that Leuer and Grainy had been accused of sexually harassing HD.

15. The February 7 Notice stated that the District had allegedly conducted an individualized safety and risk analysis concerning Leuer and Grainy, and had determined that Leuer and Grainy posed an immediate threat to the physical health and safety of students, arising from allegations of sexual harassment. Copies of the February 7 Notices are attached hereto as **Exhibit A**.

16. The "Notices of Emergency Removal" did not identify the "emergency threat of physical safety or harm" allegedly posed by Leuer and Grainy.

17. Defendants, in said "Notice(s) of Emergency Removal", provided no other information or factual support regarding the allegations of sexual harassment.

18. On February 7, 2023, Plaintiffs' counsel, by e-mail, challenged said decision and requested all relevant documentation associated with the District's Decision. A copy of the e-mail is attached hereto as **Exhibit B**.

19. On February 8, 2023, counsel for Grainy challenged said decision and requested all relevant documentation associated with the District's Decision. A copy of the e-mail is attached hereto as **Exhibit C**.

20. On February 9, 2023, by correspondence sent by e-mail, the District informed Plaintiffs by "Notice of Formal Complaint of Sexual Harassment Under Title IX" of the allegations of sexual harassment made against Leuer and Grainy, and set Friday, February 10, 2023, at 10:00 a.m. at the District office as the date for a meeting. Copies of said "Notices" are attached hereto as **Exhibit D**.

21. On February 9, 2023, via e-mail, Plaintiffs' counsel requested a copy of: (1) the Formal Complaint allegedly filed against Plaintiffs, (2) the Individualized Safety and Risk Analysis allegedly conducted by Plaintiffs, and (3) any records, reports, or other information utilized by the District in its alleged risk analysis. A copy of said e-mail is attached hereto as **Exhibit E**.

22. On February 10, 2023, at 10:00 a.m., the Plaintiffs, with their attorneys, met with Superintendent Croft and Defendants' legal counsel. In spite of Plaintiffs' demands, the District

provided no additional information in support of its decision at that meeting for emergency removal, and answered none of Plaintiffs' questions concerning what threat the Plaintiffs posed to HD.

23. During the February 10 meeting, the District did not explain how Plaintiffs posed an immediate physical threat to anyone. Plaintiffs objected to the removal of Leuer and Grainy from normal school classes and activities, and demanded that the District explain how either Leuer or Grainy posed "an immediate threat to the physical safety of" Plaintiffs' fellow student.

24. At the meeting on February 10, it was explained to the Superintendent that, upon information and belief, the alleged incidents of sexual harassment involved "piling on" incidents; wherein various members of the wrestling team would pile on other teammates, including HD, as horseplay, or a form of roughhousing.

25. Specifically, Plaintiffs explained to Defendants that various members of the school's wrestling team, including Leuer and Grainy, piled on HD and other members of the team, as horseplay. Plaintiffs explained that this always occurred while the team coach or some other school authority figure was present.

26. Plaintiffs further explained to Defendants that Varsity Team coach, Steven Hart, and Junior Varsity coach, Joe Buscaglia, and Athletic Director, Vince Dell'Oso, and Kevin Lucinski, a Newfane Coach and also a Lockport Police Officer, were each present for one or more of these dog piles.

27. Plaintiffs have subsequently learned that HD, after leaving practice on January 25, 2023, complained about the dog piles, via text messages to Mr. Hart, who addressed the matter with the wrestling team. In turn, some members of the wrestling team, including Plaintiffs, later

in the week texted and spoke with HD, and apologized to HD for the dog piles. At the time of these apologies, Plaintiffs did not know that HD, and his mother, would later accuse Plaintiffs of harassment of a "sexual" nature.

28. Plaintiffs have subsequently learned that later that evening of January 25, 2023, Mr. Hart went to HD's house and spoke with HD further and asked him to remain with the Team. HD decided to remain with the Team.

29. Plaintiffs understood the matter had been properly addressed and dealt with, and HD and his parents were not concerned about HD's safety, and he continued participation with the Team.

30. As of January 25, 2023, no allegation had been made by HD or his mother to Coach Hart or anyone else of sexual harassment.

31. From January 24, 2023 until February 7, 2023, a period of 13 days, Plaintiffs and HD, remained teammates and classmates, without incident. Leuer and HD even attended daily English class together. There was no allegation by HD that his physical safety was threatened by Plaintiffs.

32. In fact, on Friday, January 27, 2023, the entire wrestling team, including HD, attended the New York State Championship in Syracuse, New York. The wrestlers were all together for two days. The wrestling team stayed at Double Tree Hotel and the parents stayed at the Hampton Inn.

33. The entire wrestling team got along, and there was no allegation of sexual harassment made against Plaintiffs. Leuer and HD were talking throughout the day. The whole

Team went out to dinner, with parents, to celebrate. There was no allegation of sexual harassment.

34. Plaintiffs have subsequently learned that, on January 31, 2023, HD's mother learned that HD would not be able to attend the Class Tournament scheduled for February 4-5, 2023, as the coach told her he could only take 13 wrestlers, not 15, as he initially thought. HD did not make the cut.

35. On February 1, 2023, Plaintiff's mother, Michelle Leuer received a text message from Hunter's mother. A copy of said text message is attached hereto as **Exhibit F**.

36. On February 14, 2023, by correspondence, "Determination on Emergency Removal Challenge, the Superintendent upheld the "Emergency Removal" of Plaintiffs. "I do not find there to be sufficient grounds to reverse the initial determination". A copy of said Determination is attached hereto as **Exhibit G**.

37. On February 14, 2023, Plaintiffs' counsel, by e-mail, disagreed with the Superintendent's decision and, again, questioned the Superintendent "In what way does Leuer present an immediate threat to the safety of any student"? A copy of said e-mail is attached hereto as **Exhibit H**.

38. Defendants failed to conduct an individualized safety and risk analysis prior to the February 14, 2023 determination.

39. During the two weeks of practice following January 25, 2023, the mother of HD had not complained again to the school or Plaintiffs regarding the alleged incident(s), was present for the meet in Syracuse on January 28, 2023, and the Team continued to practice regularly for the upcoming event.

40. The District purported to conduct an investigation into the formal complaint of sexual harassment against Leuer and Grainy.

41. This "investigation" was conducted by the same law firm that originally advised the District on removing Leuer and Grainy on an emergency basis, creating a clear conflict of interest.

42. In fact, the attorney responsible for the "investigation" is a close relative of the attorney who advised the District to proceed with the emergency removal.

43. These conflicts violated the District's own policies and procedures.

44. Upon information and belief, the District delayed the completion of or otherwise conducted its "investigation" in a manner so that its ultimate decision would not occur until after the school-year ended.

45. The District's "investigation" was designed to or had the effect of denying Leuer and Grainy due process to challenge the complaints made against them.

46. The school year ended on June 22, 2023. Leuer and Grainy were removed from the classroom and related school activities from February 7, 2023 through and including the end of the school year, effectively missing the second half of their Senior year.

47. Because Defendants did not formally suspend or otherwise discipline Leuer or Grainy during their "emergency removal," Plaintiffs were denied an opportunity to further challenge their removal through an evidentiary hearing.

48. On April 27, 2023, Plaintiffs served their respective Notices of Claim on Defendants. Copies of such Notices as attached as **Exhibit I.**

49. Since that time, Plaintiffs have been subjected to public ridicule, scorn, and humiliation. This ridicule has manifested in the form of personal interactions out in public, on-line derogatory attacks against Plaintiffs, and has caused both personal and professional harm to Leuer, Grainy, and their families.

**VIOLATION OF EQUAL PROTECTION AND DUE PROCESS UNDER 42 USC §1983**

50. Plaintiffs repeat and re-allege the prior allegations contained in the complaint as if fully set forth herein.

51. Title 42 U.S.C. § 1983 provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

52. Dr. Croft and his Co-Defendants were, at all times referenced herein, acting within the scope of their employment and under color of law.

53. Each of the Defendants violated Plaintiffs' rights, privileges, or immunities secured by the U.S. and N.Y.S. Constitution and established law.

54. By removing Leuer and Grainy from the classroom and all related school activities on an "emergency" basis without first conducting an individualized safety and risk analysis, and/or without presenting any factual basis for Defendants' decision to remove Leuer and Grainy without a hearing and/or a right to challenge Defendants' alleged "evidence,"

Defendants deprived Plaintiffs of Plaintiffs' rights, privileges, and/or immunities secured by the Constitution or laws of the United States.

55. Dr. Croft, through his owns individual actions, was personally involved in the deprivation of Plaintiffs' federal constitutional rights.

56. The Board, through its members who voted to uphold Dr. Croft's decision to removal Leuer and Grainy, was also involved in the deprivation of Plaintiffs' federal constitutional rights.

57. The constitutional violations at issue in this action were caused by action pursuant to official District policy.

58. The District failed to follow and/or refused to its own policies by removing Leuer and Grainy without first conducting an individualized safety and risk analysis.

59. The constitutional violations at issue in this action resulted, in part, from (1) a formal policy officially endorsed by the District; (2) actions taken by Dr. Croft, members of the Board, and other District officials responsible for establishing the District's policies that caused the particular deprivations in question; (3) a practice so consistent and widespread that, even if not expressly authorized, constitutes a custom or usage of which a supervising policy-maker such as Dr. Croft must have been aware; and (4) a failure by the District's policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of the District's students, including, without limitation, Leuer and Grainy.

60. Moreover, the constitutional violations in this action arose due, in part, to Dr. Croft's decision to improperly hide behind the District's alleged "Title IX" policy by removing Leuer and Grainy from class without a hearing and without any other suitable due process.

61. In effect, Dr. Croft anointed himself as the District's final policymaker, and refused to afford Leuer and Grainy the Constitutional protections to which they are entitled.

62. The actions complained of by Plaintiffs were intentional and were designed to deprive Plaintiffs of their Constitutional rights.

63. Even if the District's Title IX Policy and related policies are facially neutral, Defendants applied them in such a way against Plaintiffs so as to deprive Plaintiffs of their Constitutional rights.

64. Defendants' decision to remove Leuer and Grainy on an emergency basis without due process and without first conducting an individualized safety and risk analysis reflects Defendants' deliberate indifference to the Plaintiffs' Constitutional rights.

65. Indeed, Dr. Croft's indifference to the rights of Leuer and Grainy was such that one can only conclude that he intended for Leuer and Grainy to be deprived of those rights.

66. The District and the Board had actual knowledge of Dr. Croft's failure to conduct an individualized safety and risk analysis prior to removing Leuer and Grainy without due process, and expressly sanctioned and upheld the improper removals.

67. To be clear, Plaintiffs had both a state law right and constitutionally protected guarantee to a public education free from discriminatory or arbitrary and capricious behavior on the part of Defendants.

68. By removing Plaintiffs from school without any due process, Defendants violated their own policies and deprived Plaintiffs of their Constitutional rights.

69. Defendants' actions damaged Plaintiffs in an amount to be determined at trial, but in no event less than $1,500,000.00.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in an amount to be determined at trial, but in no event less than $1,500,000 in compensatory damages for the loss of their Senior year in high school, related conscious pain and suffering, emotional distress, stigma, reputation damage, mental anguish, and pecuniary loss, together with an award of punitive damages, costs of suit and reasonable attorneys' fees pursuant to 42 USC §1988, together with such other and further relief as may be just and equitable.


Dated:   Buffalo, New York
         March 28, 2024

GROSS SHUMAN P.C.

By: _____
B. Kevin Burke, Jr.
Kevin R. Lelonek
465 Main Street, Suite 600
Buffalo, New York 14203
Tel: (716) 854-4300
kburke@gross-shuman.com

A. Angelo DiMillo, Esq.
16 West Main Street
Lockport, New York 14094
Tel: (716) 302-8090
adim523@yahoo.com

*Attorneys for Plaintiffs*

## VERIFICATION

STATE OF VA )
) SS:
COUNTY OF Fairfax )

James Leuer, Jr., being duly sworn, deposes and says that he is one of the Plaintiffs in the within action; that he has read the foregoing Complaint and knows the contents thereof and that the same is true to the best of his knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters he believes it to be true.

_____
James Leuer, Jr.

Sworn to before me this 01 day of April ~~March~~, 2024.

_____
Notary Public

Farzana Barjor Manelsha
Commonwealth of Virginia
Notary Public
Commission No: 7744219
My Commission Expires: Jan/31/2025

-13-

## VERIFICATION

STATE OF NEW YORK   )
                    ) SS:
COUNTY OF NIAGARA  )

Landon Grainy, being duly sworn, deposes and says that he is one of the Plaintiffs in the within action; that he has read the foregoing Complaint and knows the contents thereof and that the same is true to the best of his knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters he believes it to be true.

*[signature]*

Landon Grainy

Sworn to before me this 28 day of
March 2024.

*[signature]*
Notary Public

Jesstin M. Kolacz
Notary Public, State of New York
Reg. #01KO6441625
Qualified in Niagara County
Commission Expires 09/26/2026

Doc #1138685-4

-14-