UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JAMES LEUER, JR., and LANDON
GRAINY,

        Plaintiffs,

    v.

STARPOINT CENTRAL SCHOOL
DISTRICT et al.,

        Defendants.

24-CV-376-LJV
DECISION & ORDER

---

On April 23, 2024, the plaintiffs—two former students in the Starpoint Central School District in Lockport, New York ("Starpoint")—commenced this action under 42 U.S.C. § 1983. Docket Item 1. They claim that the defendants—Starpoint, the Starpoint Board of Education, and Starpoint Superintendent Dr. Sean Croft—violated their rights to equal protection and due process when the defendants removed them from Starpoint High School on an "emergency basis."[1] *See id.*

On June 7, 2024, the defendants moved to dismiss the complaint. Docket Item 14. The plaintiffs then responded, Docket Items 17 and 18, and the defendants replied, Docket Item 21. After careful consideration, this Court grants the defendants' motion

---

[1] Under the Title IX regulation with the subdivision titled "[e]mergency removal," a school may "remov[e] a respondent from the [school's] education program or activity on an emergency basis, provided that the [school] undertakes an individualized safety and risk analysis, determines that an immediate threat to the physical health or safety of any student or other individual arising from the allegations of sexual harassment justifies removal, and provides the respondent with notice and an opportunity to challenge the decision immediately following the removal." 34 C.F.R. § 106.44(c) (version effective Aug. 14, 2020, through July 31, 2024).

without prejudice to the plaintiffs' moving to amend their complaint consistent with Local Rule of Civil Procedure 15.

## FACTUAL BACKGROUND[2]

The plaintiffs were members of the Starpoint High School wrestling team during the spring semester of 2023, their senior year. Docket Item 1 at ¶¶ 13, 46. On February 7, 2023, Dr. Croft sent the plaintiffs a "Notice of Emergency Removal," which informed them that Starpoint had "conducted an individualized safety and risk analysis" and "determined that [they] posed an immediate threat to the physical health and safety of students[] arising from allegations of sexual harassment." *Id.* at ¶¶ 14-15.

According to the plaintiffs, those "Notices of Emergency Removal" were deficient in that they "did not identify the 'emergency threat of physical safety or harm'" perpetrated by the plaintiffs. *Id.* at ¶ 16. The notices also "provided no other information or factual support regarding the allegations of sexual harassment." *Id.* at ¶ 17. Immediately after receiving the notices, the plaintiffs' attorneys therefore "challenged [Starpoint's] decision and requested all relevant documentation associated with the . . . [d]ecision." *Id.* at ¶¶ 18-19.

Nevertheless, on February 9, 2023, Starpoint informed the plaintiffs "by 'Notice of Formal Complaint of Sexual Harassment Under Title IX'" that they had been accused of sexual harassment. *Id.* at ¶ 20. The notices scheduled a hearing the next morning. *Id.*

---

[2] The following facts are taken from the complaint, Docket Item 1. On a motion to dismiss, the court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).

At the hearing, the plaintiffs said that any allegations of sexual harassment were false. *See id.* at ¶ 24. More specifically, they "explained" that the allegations were based on several "'piling on' incidents" involving the Starpoint wrestling team, which were merely instances of team "horseplay, or a form of roughhousing," and not sexual harassment. *Id.* The plaintiffs also said that wrestling team coaches were present during each of the incidents. *Id.* at ¶¶ 25-26.

In contrast, Starpoint "provided no additional information in support of its decision." *Id.* at ¶ 22. In fact, Starpoint "did not explain how [either of the p]laintiffs posed an immediate physical threat to anyone." *Id.* at ¶ 23. The plaintiffs therefore "objected to [their] removal" from school "and demanded that [Starpoint] explain how either [of them] posed 'an immediate threat to the physical safety'" of any other student. *Id.*

Four days after the hearing, Dr. Croft "upheld the 'Emergency Removal' of [the p]laintiffs," stating that he "d[id] not find there to be sufficient grounds to reverse the initial determination." *Id.* at ¶ 36. As a result, the plaintiffs "were removed from the classroom and related school activities from February 7, 2023[,] through and including the end of the school year, effectively missing the second half of their [s]enior year." *Id.* at ¶ 46.

## PROCEDURAL HISTORY

On February 28, 2023, the plaintiffs filed a petition under Article 78 of the New York Civil Practice Law and Rules (CPLR) in New York State Supreme Court, Niagara County. *See* Docket Item 14-2. That petition alleged that the defendants' emergency removal of the plaintiffs was arbitrary and capricious, an abuse of discretion, and a

3

violation of lawful procedure.  *See id.*  And it argued that Starpoint's decision therefore should be annulled and vacated.[3]  *See id*.

On May 4, 2023, New York State Supreme Court Justice Frank Caruso denied the plaintiffs' petition and granted the defendants' motion to dismiss.  *See* Docket Item 14-3.  The plaintiffs appealed Justice Caruso's decision to the Appellate Division, Fourth Department.  *See James L. v. Starpoint Cent. Sch. Dist.*, 229 A.D.3d 1344, 213 N.Y.S.3d 834 (4th Dep't 2024).  While that appeal was pending, the plaintiffs filed this suit.  Docket Item 1.  On July 26, 2024, the Fourth Department affirmed Justice Caruso's decision, "conclud[ing] that [the defendants'] emergency removal determination [wa]s supported by a rational basis and [wa]s not arbitrary and capricious."  *James L.*, 229 A.D.3d at 1344, 213 N.Y.S.3d at 835.

## LEGAL PRINCIPLES

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but

---

[3] The defendants removed the plaintiffs' Article 78 petition to this Court.  *Doe 1 v. Starpoint Cent. Sch. Dist.*, 2023 WL 2859134, at *1 (W.D.N.Y. Apr. 10, 2023).  But the plaintiffs moved to remand the case, and this Court granted that motion.  *See id.* at *7.

it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

## DISCUSSION

### I. DUE PROCESS

"Due process requires that before state actors deprive a person of . . . property, they offer [the person] a meaningful opportunity to be heard." *WWBITV, Inc. v. Vill. of Rouses Point*, 589 F.3d 46, 50 (2d Cir. 2009) (citing *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965)). "The Supreme Court has held, however, that in emergency situations a state may satisfy the requirements of procedural due process merely by making available 'some meaningful means by which to assess the propriety of the State's action at some time after the initial taking.'" *Id.* (quoting *Parratt v. Taylor*, 451 U.S. 527, 539 (1981)). Thus, "[w]here there is an emergency requiring quick action and where meaningful pre-deprivation process would be impractical, the government is relieved of its usual obligation to provide a hearing, as long as there is an adequate procedure in place to assess the propriety of the deprivation afterwards." *Id.*

Here, the plaintiffs argue that they have plausibly pleaded that the "[d]efendants did not have a reasonable basis to believe that an emergency existed sufficient to invoke a Title IX emergency removal and [that the d]efendants' invocation of the Title IX emergency removal was arbitrary and/or an abuse of discretion." Docket Item 18 at 19-20.[4] The problem for the plaintiffs, however, is that the state court already squarely decided these issues against them. *See* Docket Item 14-3; *James L.*, 229 A.D.3d at

---

[4] Page numbers in docket citations refer to ECF pagination.

1344, 213 N.Y.S.3d at 835.  And "a party may not 'relitigat[e] an issue which has previously been decided against him in a proceeding in which he had a fair opportunity to fully litigate the point,'" *Lilakos v. New York City*, 808 F. App'x 4, 9 (2d Cir. 2020) (summary order) (quoting *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455, 588, 482 N.E.2d 63, 67 (1985)).

Here, as in *Lilakos,* "the state court rejected [the plaintiffs'] argument that [the state actor's decision was made] in an arbitrary and capricious manner," *see id*. at 9; the Fourth Department has since affirmed that decision, *see James L.*, 229 A.D.3d at 1344, 213 N.Y.S.3d at 835.  "These decisions have preclusive effect," and as in *Lilakos,* the "[p]laintiffs [have] fail[ed] to explain how any of the alleged deficiencies in those proceedings prevented a full and fair opportunity to litigate the [relevant issues]."  *See* 808 F. App'x at 9.

In an effort to avoid this conclusion, the plaintiffs contend that their "Article 78 [p]roceeding does not preclude [their section] 1983 claims because [the d]efendants['] deprivation of their due process rights was systemic, not random."  Docket Item 18 at 22.  And, they say, "[w]here an alleged deprivation of due process is systemic, and not random, post-deprivation remedies do not automatically bar a claim under [section] 1983."  *Id.* at 23 (citing *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996) ("When the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of post[-]deprivation procedures will not, ipso facto, satisfy due process.")).

But the allegations in the complaint belie that assertion.  The complaint does not take issue with the procedures for removing a student on an emergency basis; rather,

6

the complaint alleges that the defendants failed to properly follow those procedures by failing to "conduct[] an individualized safety and risk analysis" and to "present[] any factual basis for [their] decision to remove [the plaintiffs]" on an emergency basis. *See* Docket Item 1 at ¶ 54; *see also id.* at ¶ 58 ("[Starpoint] failed to follow and/or refused to [follow] its own policies by removing Leuer and Grainy without first conducting an individualized safety and risk analysis."). Thus, as in *Parratt*, the plaintiffs' alleged deprivation here "did not occur as a result of some established state procedure" but rather "as a result of the unauthorized failure of agents of the State to follow established state procedure." *See* 451 U.S. at 543; *see also Lilakos*, 808 F. App'x at 9 (finding that state court decisions in Article 78 proceedings were entitled to preclusive effect on the issue of whether there had been an "imminent danger" prior to the deprivation).

The parties—and this Court—may not revisit Justice Caruso's determination that Starpoint was authorized to remove the plaintiffs on an emergency basis, nor may they review the affirmance of that decision by the Fourth Department. *See Lilakos*, 808 F. App'x at 9; *WWBITV*, 589 F.3d at 50. Moreover, the Second Circuit has "held on numerous occasions that an Article 78 proceeding is a perfectly adequate post-deprivation remedy." *Lilakos*, 808 F. App'x at 10 (quoting *Hellenic Am. Neighborhood Action Comm.*, 101 F.3d at 881). Therefore, the plaintiffs have been given the process to which they were entitled, and this Court cannot and will not second guess the decision that resulted from that process.

## II. EQUAL PROTECTION

"[T]he Equal Protection Clause bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (emphasis omitted) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)); *see also City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (explaining that the Equal Protection Clause provides that "all persons similarly situated should be treated alike").  To establish an equal protection claim, a plaintiff must demonstrate "that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005). Plaintiffs may also state an equal protection claim by alleging either that "they were discriminated against as [a] 'class of one' or [that] the laws were selectively enforced against them for impermissible reasons." *Home for Aged of Little Sisters of the Poor v. McDonald*, 711 F. Supp. 3d 81, 118 (N.D.N.Y. 2024).

"To prevail under either theory of Equal Protection, a plaintiff must specify at least one instance [when] he was treated differently from another similarly situated." *Hu v. City of New York*, 927 F.3d 81, 101 (2d Cir. 2019).  "Dismissal is appropriate where a plaintiff fails to allege any similarly situated comparators." *Home for the Aged of Little Sisters of the Poor*, 711 F. Supp. 3d at 118 (citing *Ruston v. Town Bd. of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010); *Hu*, 927 F.3d at 101).

Here, the defendants argue that "[a]lthough [the p]laintiffs classify their first cause of action as 'Violation of Equal Protection and Due Process Under 42 USC § 1983,' they

8

make no allegations supporting a claim for violations of equal protection." Docket Item 14-5 at 13. The "[p]laintiffs do not allege that they were treated differently from any similarly situated comparators," the defendants say, "or that any similarly situated comparators even exist." *Id.* at 14 (citing Docket Item 1). This Court agrees.

In their opposition to the defendants' motion to dismiss, the plaintiffs contend that they "were similarly situated to all of the other members of the wrestling team who participated in the dog piles on January 23, 24, and 25 of 2023." Docket Item 18 at 25. But, the plaintiffs say, "only [they] were singled out to be removed on an 'emergency basis' under Title IX." *Id.* at 25-26.

None of those allegations appear in the complaint, however. And even if they did, the documents attached to the complaint demonstrate that the alleged victim had specifically accused the two plaintiffs, so it is not plausible that the other members of the wrestling team were similarly situated. *See* Docket Item 24 (sealed exhibits to complaint) at 12, 15.

For all those reasons, the defendants' motion to dismiss the plaintiffs' equal protection claim is granted.[5]

---

[5] The plaintiffs also argue that they have stated a viable claim under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Docket Item 18 at 26-27. But as the defendants observe, "without an underlying constitutional violation, there is no *Monell* claim." Docket Item 21 at 12 (italics added); *see Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (explaining that "[b]ecause the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct"). Therefore, because this Court finds that the plaintiffs have failed to state an equal protection or due process claim, their *Monell* claim is likewise dismissed.

### III. MOTION TO AMEND

In their opposition, the plaintiffs "seek leave to amend and/or replead" if "the Court [is] inclined to grant [the d]efendants' motion to dismiss." Docket Item 18 at 27-28. The plaintiffs' request, however, does not comply with Local Rule of Civil Procedure 15, which requires "[a] movant seeking to amend . . . a pleading" to provide "the proposed amended pleading" with the changes identified in "redline." Loc. R. Civ. P. 15(a)-(b). Accordingly, this Court will give the plaintiffs an opportunity to refile their motion in compliance with Rule 15. This Court's dismissal of the plaintiffs' claims is therefore without prejudice to their moving to amend the complaint to correct the deficiencies outlined above within 30 days of the date of this decision and order.

### CONCLUSION

For the reasons stated above, the defendants' motion to dismiss, Docket Item 14, is GRANTED, and the plaintiffs' claims are dismissed without prejudice to their moving to amend their complaint **within 30 days of the date of this decision and order**. If the plaintiffs do not move to amend their complaint within 30 days of the date of this decision and order, then the Clerk of the Court shall close the case and enter judgment for the defendants without further order.

SO ORDERED.

Dated:   March 28, 2025
         Buffalo, New York

                                                          **/s/ Lawrence J. Vilardo**
                                                          LAWRENCE J. VILARDO
                                                          UNITED STATES DISTRICT JUDGE