UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JAMES LEUER, JR., and LANDON
GRAINY,

              Plaintiffs,

      v.

STARPOINT CENTRAL SCHOOL
DISTRICT et al.,

              Defendants.

24-CV-376-LJV
DECISION & ORDER

---

The plaintiffs, two former students at Starpoint High School in Lockport, New York, commenced this action on April 23, 2024. Docket Item 1. The complaint, which was brought under 42 U.S.C. § 1983, claimed that the defendants—the Starpoint Central School District ("Starpoint"), the Starpoint Board of Education, and Starpoint Superintendent Dr. Sean Croft—violated the plaintiffs' constitutional rights by removing them from Starpoint High School on an "emergency basis" in 2023. *See id.*

After the defendants moved to dismiss the complaint, Docket Item 14, the plaintiffs responded, Docket Items 17 and 18, and the defendants replied, Docket Item 21. On March 28, 2025, the Court granted the defendants' motion without prejudice to the plaintiffs' moving for leave to file an amended complaint. *Leuer v. Starpoint Cent. Sch. Dist.*, 2025 WL 949076 (W.D.N.Y. Mar. 28, 2025).

On April 25, 2025, the plaintiffs did so. Docket Item 28. The defendants responded to that motion, Docket Item 30, and the plaintiffs did not reply. For the reasons that follow, the plaintiffs' motion to amend, Docket Item 28, is DENIED.

## BACKGROUND[1]

In the spring semester of 2023, Leuer and Grainy were both seniors at Starpoint High School and members of the wrestling team.  Docket Item 28-2 ¶¶ 13, 39.  On February 7, 2023, they each received an email from Dr. Croft "styled 'Notice of Emergency Removal.'"  *Id.* ¶ 14.  That email told Leuer and Grainy that, after Starpoint had "conducted an individualized safety and risk analysis," it had determined that they both "posed an immediate threat to the physical health and safety of students[] arising from allegations of sexual harassment."  *Id.* ¶ 15.  "The 'Notices of Emergency Removal' did not identify the 'emergency threat of physical safety or harm' allegedly posed by Leuer and Grainy," nor did they "provide[ any] other information or factual support regarding the allegations of sexual harassment."  *Id.* ¶¶ 16-17.

---

[1] In deciding a motion to amend, "a court must accept all allegations in the proposed amended complaint as true and draw all reasonable inferences in the plaintiff's favor."  *Associated Mortg. Bankers, Inc. v. Calcon Mut. Mortg. LLC*, 159 F. Supp. 3d 324, 331 (E.D.N.Y. 2016).  Moreover, a court is "limit[ed to] consider[ing] . . . (1) the factual allegations in the proposed complaint; (2) documents attached with the proposed complaint as an exhibit or incorporated by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the proposed complaint relies heavily, i.e., documents that are 'integral' to the proposed complaint."  *Sanders v. County of Niagara*, 2025 WL 611153, at *4 (W.D.N.Y. Feb. 26, 2025) (italics and footnote omitted).

Leuer and Grainy attached the notices described below and several other exhibits to their complaint, *see* Docket Item 1-1; Docket Item 24, which they then sought to seal, *see* Docket Item 4.  The Court granted that motion in part, Docket Item 23, after which Leuer and Grainy filed redacted versions of those exhibits on the docket, Docket Item 26.  They have attached the same exhibits to their proposed amended complaint, *see* Docket Item 28-2 at 19-26, and ask the Court "to keep all exhibits filed under seal," Docket Item 28-1 ¶ 8.  Accordingly, the following facts are taken from the proposed amended complaint, Docket Item 28-2, and the exhibits submitted with both the original complaint and the proposed amended complaint, Docket Items 24 (sealed versions) and 26 (redacted versions).  Throughout this decision and order, page numbers in docket citations refer to ECF pagination.

Counsel for Leuer and Grainy challenged the decision to remove them "and requested all relevant documentation associated with [Starpoint]'s decision."  *Id.*  ¶¶ 18-19.  On February 9, 2023, Starpoint notified Leuer and Grainy "by 'Notice of Formal Complaint of Sexual Harassment Under Title IX'" that they had been accused of sexual harassment and that a meeting had been scheduled for the next day.  *Id*. ¶ 20; *see also* Docket Item 26 at 11, 14 (redacted version of notices sent to Leuer and Grainy).

At that meeting, Leuer and Grainy told the defendants that any allegations of sexual harassment were false; they said that what really happened was nothing more than "'piling on' incidents[] wherein various members of the wrestling team would pile on other teammates . . . as horseplay, or a form of roughhousing."  *See* Docket Item 28-2 ¶ 23.  They also said that "the team coach or some other school authority figure" always was present when the roughhousing occurred.  *Id.* ¶¶ 24.  Starpoint, on the other hand, "provided no additional information in support of its decision . . . and answered none of [the p]laintiffs' questions."  *Id.* ¶¶ 21-22.

In spite of all that, on February 14, 2023, Dr. Croft "upheld the 'Emergency Removal' of [the p]laintiffs," stating that he "d[id] not find there to be sufficient grounds to reverse the initial determination."  *Id.* ¶ 35.[2]  Leuer and Grainy then "were removed from

---

[2] As the Court noted in its prior decision and order, two weeks after Dr. Croft upheld their emergency removal, Leuer and Grainy filed a petition in New York State Supreme Court, Niagara County, under Article 78 of the New York Civil Practice Law and Rules seeking to have that decision annulled and vacated.  *See Leuer v. Starpoint Cent. Sch. Dist.*, 2025 WL 949076, at *2 (W.D.N.Y. Mar. 28, 2025).  On May 4, 2023, New York State Supreme Court Justice Frank Caruso denied the petition.  *Id.*  Leuer and Grainy appealed that decision to the Appellate Division, Fourth Department, and commenced this action while that appeal was pending.  *Id.*  The Fourth Department later affirmed Justice Caruso's decision, "conclud[ing] that [the defendants'] emergency removal determination [wa]s supported by a rational basis and [wa]s not arbitrary and

the classroom and related school activities from February 7, 2023, through and including the end of the school year, effectively missing the second half of their senior year." *Id*. ¶ 39.  In contrast, "similarly situated comparators" who had "committed the same or substantially similar acts [to Leuer's and Grainy's]" were not punished.  *Id*. ¶¶ 42-48.  More specifically, the defendants knew that three other members of the wrestling team committed acts that were "the same [as] or substantially similar [to]" what Leuer and Grainy were alleged to have done.  *Id*. ¶¶ 42-43.   Nevertheless, those three students were not subject to "Emergency Removal"; in fact, the defendants even "intended to remove" one of those teammates on an "emergency basis too, but . . . reversed course."  *Id.* ¶¶ 48-49, 54.

All of this subjected Leuer and Grainy "to public ridicule, scorn, and humiliation" and has caused "personal and professional harm."  *Id.* ¶ 49.

### LEGAL PRINCIPLES

Under Federal Rule of Civil Procedure 15, a plaintiff may file an amended complaint "once as a matter of course" within 21 days after serving the initial complaint, 21 days after service of a responsive pleading, or 21 days after service of a motion under Rule 12.  Fed. R. Civ. P. 15(a)(1).  Otherwise, a plaintiff may amend the complaint "only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  A court "should freely give leave [to amend] when justice so requires." *Id.*  Leave to amend should be denied, however, when the party seeking to amend has

---

capricious."  *James L. v. Starpoint Cent. Sch. Dist.*, 229 A.D.3d 1344, 1344, 213 N.Y.S.3d 834, 835 (4th Dep't 2024).

acted in bad faith, when the amendment would unfairly prejudice the opposing party, or when the proposed amendment would be futile. *State Tchs. Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

"Amendment would be futile where 'a complaint . . . even as amended would fail to state a cause of action.'" *Bonano v. Southside United Hous. Dev. Corp.*, 363 F. Supp. 2d 559, 562 (E.D.N.Y. 2005) (omission original) (quoting *S.S. Silberblatt, Inc. v. E. Harlem Pilot Block Bldg. 1 Hous. Dev. Fund Co.*, 608 F.2d 28, 42 (2d Cir. 1979)). Motions to amend are reviewed "through the prism of a Rule 12(b)(6) analysis," and "leave to amend a complaint will be denied if the amended complaint could not withstand a motion to dismiss." *Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 432-33 (S.D.N.Y. 2006).

## DISCUSSION

In the original complaint, Leuer and Grainy alleged that the defendants violated their rights to equal protection and due process. *See* Docket Item 1 ¶¶ 50-69.[3] In the proposed amended complaint, Leuer and Grainy seek to bring only an equal protection claim based on what they say is the different treatment their three teammates received. *See* Docket Item 28-2 ¶¶ 50-68.

---

[3] The original complaint alleged that the defendants violated the plaintiffs' rights to due process by failing to properly follow the relevant procedures for removing students on an emergency basis. *See Leuer*, 2025 WL 949076, at *3 (discussing plaintiffs' due process claim). But because the state court decision on their Article 78 petition precluded that claim—and because the plaintiffs did not plausibly allege that the due process violation was systemic—the Court concluded that the complaint did not raise a plausible due process claim. *Id.* at *4.

"The Equal Protection Clause prohibits states 'from deny[ing] to any person within [their] jurisdiction the equal protection of the laws,'" *Chinese Am. Citizens All. of Greater N.Y. v. Adams*, 116 F.4th 161, 170 (2d Cir. 2024) (alterations original) (quoting U.S. Const. amend. XIV, § 1), and "protects individuals from invidious discrimination," *Trowell v. Theodarakis*, 2018 WL 3233140, at *3 (D. Conn. July 2, 2018). "The Clause's 'central purpose is to prevent the States from purposefully discriminating between individuals on the basis of race.'" *Adams*, 116 F.4th at 170 (quoting *Shaw v. Reno*, 509 U.S. 630, 642 (1993)). But the Second Circuit "ha[s] long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." *Harlen Assocs. v. Incorporated Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001); *see also Dean v. Town of Hamden*, 164 F. Supp. 3d 293, 299 (D. Conn. 2016) ("The Equal Protection Clause protects the right of people to be free from invidious discrimination at the hands of government officials, even for people who do not claim membership in a traditionally protected class of persons." (citation and internal quotation marks omitted)).

"Where a plaintiff does not claim membership in a protected class, he or she may pursue a 'selective-enforcement' or 'class-of-one' claim." *Luke's Catering Service, LLC v. Cuomo*, 485 F. Supp. 3d 369, 385 (W.D.N.Y. 2020). "Under either theory, an individual must demonstrate that he was treated differently from other similarly[ ]situated individuals." *Jones v. Cuomo*, 542 F. Supp. 3d 207, 223 (S.D.N.Y. 2021) (citing *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005)).

A class-of-one claim, also known as an *Olech* claim, requires a plaintiff to show (1) that "no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy," and (2) that "the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake." *Hu v. City of New York*, 927 F.3d 81, 92 (2d Cir. 2019) (citation and internal quotation marks omitted). Such a claim "requires an extremely high degree of similarity between a plaintiff and a comparator." *Id.* at 93 (internal quotation marks omitted).

A selective enforcement claim, first recognized by the Second Circuit in *LeClair v. Saunders*, 627 F.2d 606 (2d Cir. 1980), involves "the selective enforcement of the law." *Hu*, 927 F.3d at 91. "To prevail on such a claim, a plaintiff must prove that '(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.'" *Id.* (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995)). "The *LeClair* type of equal protection claim requires proof of disparate treatment and impermissible motivation." *Bizzarro*, 394 F.3d at 87.

The proposed amended complaint does not specify the theory under which the plaintiffs raise their equal protection claim, but a broad reading of the pleading suggests both theories. And in their opposition to the plaintiffs' motion to amend, the defendants address both: They say that both an *Olech* and *LeClair* claim fail because the plaintiffs

do not sufficiently allege the existence of similarly situated comparators. Docket Item 30 at 9-10. The defendants acknowledge that the plaintiffs "identify three wrestling teammates as comparators" but say that that the plaintiffs' "conclusory allegations . . . do[] not place these students in a similar situation as [the p]laintiffs." *Id.* at 8, 10. Citing documents attached to both the initial complaint and the proposed amended complaint, the defendants note that unlike their three teammates, the plaintiffs "were named as respondents in a Title IX sexual harassment [c]omplaint." *Id.*at 8. Moreover, the defendants say, the proposed amended complaint does "not allege that the other students were identified by the victim or . . . named as respondents in a Title IX [c]omplaint." *Id.*

This Court agrees with the defendants. First, the proposed amended complaint does not claim that the alleged victim accused any of the three teammates. *See* Docket Item 28-2 ¶ 44 (alleging only that "[d]efendants were aware that Christopher Updegrove had been identified"); *id.* ¶ 45 (alleging only that "Matthew Caldwell was . . . identified"); *id.* ¶ 47 (alleging that "[d]efendants had actual knowledge that [the alleged victim] and his mother had knowledge" about Sean McDonald). Nor does the proposed amended complaint allege that those teammates were named in any Title IX complaint, which is what triggered the disciplinary process that led to the plaintiffs' removal. On the contrary, as this Court noted in its prior decision, "the documents attached to the complaint demonstrate that the alleged victim had specifically accused [only] the two plaintiffs." *Leuer*, 2025 WL 949076, at *4.

What is more, the proposed amended complaint does not allege that the comparators engaged in "forcibl[e] touch[ing]" or "penetrat[ion]," as the alleged victim

8

said Leuer and Grainy did.  *See* Docket Item 24 at 12, 15.  On the contrary, the amended complaint alleges only that the other students participated in the incidents to a lesser degree.  *See, e.g.,* Docket Item 28-2 ¶ 44 (alleging that "Updegrove had been identified as one of the individuals who allegedly forcibly disrobed [the alleged victim], throwing [the alleged victim's] shoe on top of a scoreboard in the gym"); ¶¶ 45-46 (alleging that "Caldwell was . . . identified as the [c]omparator who yelled 'pineapple'" as a "trigger" word); ¶ 47 (alleging that McDonald "was involved in the alleged inappropriate touching of [the alleged victim]" but making no mention of any alleged penetration).[4]  So even if the comparators had some other involvement in the alleged wrongdoing, the proposed amended pleading does not allege that serious sexual misconduct allegations were lodged against any of the comparators.  Based on that alone, the three teammates are not sufficiently similar to establish either the "extremely high degree of similarity," *Hu*, 927 F.3d at 93 (internal quotation marks omitted), necessary for an *Olech* claim, or the "reasonably close resemblance," *Jones*, 542 F. Supp. 3d at 223-24, necessary for a *LeClair* claim.

---

[4] The closest call is the allegation in the proposed amended complaint that McDonald "was involved in the alleged inappropriate touching."  *See* Docket Item 28-2 ¶ 47.  As noted above, however, no one says that McDonald penetrated the alleged victim, nor is it clear what his "involve[ment]" was in the "alleged inappropriate touching" or even whether it was "forcible."  In any event, the plaintiffs allege only that the "[d]efendants had actual knowledge that [the alleged victim] and his mother had knowledge that" McDonald was involved in the alleged inappropriate touching.  *Id.* Even assuming—as this Court must at this stage—that it is true that the defendants *knew* that that the victim *knew* that McDonald was involved, that is a far cry from the alleged victim's accusing McDonald of the offensive contact.  Because the alleged victim apparently did not accuse McDonald, from the defendants' perspective McDonald was in a different position than the plaintiffs.  And for that reason, the attempt to use McDonald as a close comparator misses the mark.

Moreover, even if the plaintiffs had pleaded a "reasonably close resemblance" with their three teammates—that is, even if they satisfied the first prong of a *LeClair* claim—their claim still would fail because they do not allege facts suggesting the defendants' bad faith or impermissible motivation.  Indeed, the closest the proposed amended complaint comes to making such an allegation is its assertion that the defendants intended to remove McDonald but "reversed course and treated him differently."  Docket Item 28 ¶ 48.  The plaintiffs clearly think that decision was unfair. But they do not say that the allegedly disparate treatment—removing them and not their teammate—was caused by ill will, let alone allege facts suggesting that the defendants felt ill will toward them.  And where a "complaint is devoid of any facts suggesting malice," it cannot raise a plausible selective enforcement claim.  *Lilakos v. New York City*, 808 F. App'x 4, 8 (2d Cir. 2020) (summary order).

In sum, because the proposed amended complaint does not raise a viable equal protection claim, allowing the plaintiffs to amend would be futile.[5]  And for that reason, the motion to amend is denied.

---

[5] In its prior decision, the Court concluded that the plaintiffs could not plead a viable claim under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), because they failed to state an underlying constitutional violation.  *See Leuer*, 2025 WL 949076, at *5 n.5 (citing *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006)).  As described above, the plaintiffs' proposed amended complaint also fails to plead a plausible underlying constitutional violation, so any *Monell* claim again fails.

## **CONCLUSION**

For the reasons stated above, the plaintiffs' motion for leave to file an amended complaint, Docket Item 28, is DENIED.  The Clerk of the Court shall close this case.


SO ORDERED.

Dated:   March 31, 2026
         Buffalo, New York


                              */s/ Lawrence J. Vilardo*
                              LAWRENCE J. VILARDO
                              UNITED STATES DISTRICT JUDGE

11